## SUPREME COURT.

SIDNEY J. BREESE agt. JOHN BUSBY and MARY his wife, WILLIAM MORSE, and others.

Where a judgment, upon the foreclosure of a mortgage, is a lien upon several different parcels of land, for the payment of the debt, and some of the lands still belong to the person who, in equity ought to pay the debt, and other parcels have been sold by him, the lands still owned by such person are, in equity, first chargeable with the payment of the debt, and must be first sold ; and if a resort to the parcels which have been conveyed becomes necessary, they must be sold in the inverse order of alienation.

It is not necessary for a purchaser of a parcel of the mortgaged premises, who is made a party in the suit upon the foreclosure of such mortgage, to appear in such suit to enable him, at the sale under the judgment, to insist upon this

rule in equity. Nor will he be bound to bring a suit to enforce his equitable right to have the lands of the mortgagor first sold. The court will, in such cases, relieve the party, upon motion.

*Oswego Special Term, May,* 1855.

This was a motion, made by the defendant Morse, to set aside a referee's sale upon a judgment of foreclosure. The facts upon which the motion was based are stated in the opinion. An appeal was taken to the general term from the order, which was entered in conformity to the opinion delivered at the special term, and at the April general term, 1856, held in the 5th district, the order was affirmed.

E. W. Dodge, *for motion.*
Timothy Jenkins, *opposed.*

W. F. Allen, Justice. William Morse, one of the defendants, moves to set aside the sale of a part of the mortgaged premises, made by a referee under a judgment of this court. The mortgage was given upon about an acre of land, as one parcel. The mortgagor, Busby, erected upon the mortgaged premises three dwelling-houses, which have been and still are occupied as separate tenements, with a parcel of the premises allotted to each tenement. One parcel consisting of about one-fourth of the mortgaged premises, with one of the dwelling-houses thereon, was subsequently mortgaged by Busby to Morse, and upon a foreclosure of that mortgage Morse became the purchaser, and is now the owner. About one-half of the premises are still owned by the mortgagor, and are worth much more than sufficient to pay the plaintiff's mortgage.

Subsequent to the entering the judgment in this action, the plaintiff sold and transferred the same to one Farrell, for whose benefit, and under whose direction the judgment was executed by a sale under it; and before the sale Morse offered to pay to Farrell the amount due on the judgment, and take an assign ment thereof, which offer Farrell declined, and refused to as- sign the judgment, except upon conditions that he should stip-

ulate not to enforce the same against that part of the premises owned by the mortgagor. Morse also requested that the parcel still held by the mortgagor should be first sold, and that the residue should be sold in the inverse order of alienation, which Farrell and the referee, acting under his direction, refused to do. Morse then requested a delay of the sale for twenty minutes, until the arrival of the cars from Utica, to enable him to receive an order staying proceedings, which, he informed the parties and referee, had been obtained on the morning of that day, and which, with the papers for a motion to the court for directions to the referee, he expected to receive by that train of cars. The referee, acting under the directions of Farrell, refused to delay the sale, and put up and offered for sale the part of the premises owned by Morse, and the same was sold to one Caldwell for sufficient to pay the amount due on the plaintiff's mortgage and the costs, together with the expenses of the sale. Caldwell consents to set aside the sale, and to a resale under the decree.

It is not a question whether the premises could or should have been sold in parcels, and only so much thereof sold as was necessary to pay the mortgage-debt within the provisions of the decree, and the 50th rule of the court, as that is settled by the act of the referee, in selling only one of the three parcels into which the premises have been subdivided, and to this extent the parties agree that the premises should have been sold in parcels. (*Groff* agt. *Jones*, 6 *W. R.* 522.)

The legal rights of the parties interested in the mortgaged premises as owners are, upon the undisputed facts of the case, equally well settled. · It is not disputed that the mortgagor is still the owner of one-half the premises covered by the mortgage, and that the title to the residue is in third persons—the defendant Morse owning one-fourth by title acquired from the mortgagor subsequent to the plaintiff's mortgage. The rule is very well settled at law in cases thus situated, that it is the duty of the creditor to enforce his claim, in the first instance, against that portion of the property which the debtor has not aliened; and if necessary to go beyond that, then to resort to

the parcels conveyed in the inverse order of the alienation—and the rule is the same in equity. Indeed, the rule itself is derived from the courts of equity, and has its foundation in the plainest principles of equity and good conscience. (*Evertson* agt. *Booth*, 19 *J. R.* 486 ; *The New-York and Jersey Steamboat and Ferry Company* agt. *The Associates of the Jersey Company*, *Hopkins*, 460 ; *James* agt. *Hubbard*, 1 *Paige*, 228.)

The defendant Morse has lost nothing by not appearing in the action. It is not pretended that the complaint did not truly state the claim and interest of Morse in the premises so far as it was stated, or was necessary to be stated, or that anything was stated therein which tended to charge his portion of the premises, in the first instance, with the payment of the mortgage-debt, and under such circumstances it was not necessary that he should appear to protect interests which were not attacked. (*Merchants' Ins. Co.* agt. *Mann*, 1 *Paige*, 557.) His rights and equities, whatever they were, could very properly be cared for, either by a purchase of the judgment and an assignment thereof, to which he was entitled, or by a sale of the property in parcels. (*James* agt. *Hubbard*, *supra*.) The owner of the judgment refused to receive his pay and assign his claim to him, but he did consent to sell in parcels. The consent to sell, and the actual sale of the premises in parcels, estops all parties from alleging that Morse had lost his rights by not appearing in the action. If the decree estopped Morse from claiming that the premises should be so sold, all the others were equally estopped upon the same point; but none were concluded by the decree, and the referee very properly decided that the premises should be sold in parcels ; and having so decided, it was his duty so to sell as to do equity between the parties, or, at least, was not to violate palpably well established equities : equities so well established that they may be considered as vested legal rights. Having determined to sell in parcels, it was for him to determine the order of sale, and in doing so he was bound to regard the rights of parties, and not the directions of the plaintiff. He was an officer of the court, having a discretion to exercise, and was not the mere servant

of the plaintiff. He was informed at the time of the rights of the parties, and the claim of Morse·was not disputed; and again, the·several parcels of the premises were respectively occupied by the owners, and the referee had evidence presumptive to this extent of the actual ownership.

It is true, that the defendant Morse has, in truth, lost nothing by the acts of the referee in thus selling his lot; but unless relief can be granted upon this motion, he will be driven to an action to enforce his equitable lien against the lot still owned by Busby. This action seems to me to be unnecessary.

There can be no doubt that this court has the power to supervise and control the acts of its officers in the execution of process, and that it will interfere to protect individuals from injury by reason of the oppressive or illegal execution of the judgments or process of the court. It was unreasonable in the referee to persist in selling the lot of Morse under the circumstances, and unjust towards him; and it was also unreasonable to refuse to delay the sale·twenty minutes for the purpose stated. The court will relieve against the mistake of the party, bad faith on the part of the officer making the sale, or the neglect or mistake on the part of the officer, and in every case where it is inequitable that the sale should stand. (*Brown* agt. *Frost,* 10 *Paige,* 243; *Am. Ins. Co.* agt. *Oakley,* 9 *id.* 259; *Collier* agt. *Whipple,* 13 *W. R.* 224; *Groff* agt. *Jones,* 6 *id.* 522; *Williams* agt. *Dale,* 3 *J. C. R.* 290.)

Had the equities been controverted, or had it been doubtful whether the premises should have been sold in parcels, the question would have been different; but there were no disputed facts, and no controverted equities. It was conceded that the mortgagor still owned a part, and had aliened the residue of the premises, and there was no room for doubt or hesitation as to the rights of the parties, so far as it is necessary to determine them as influencing the proper action of the referee. The plaintiff and the purchaser at the sale, and Morse, are repre· sented upon this motion, and it does not appear that any other person is in a situation to require notice of this application. None of the defendants appeared in the action. (*Bar. Ch. R.* 541.)

We cannot go back of Morse's title under his mortgage sàle, to determine the equities between him and Busby. They must be settled elsewhere, if there is anything left for litigation after the judgment for the foreclosure of his mortgage.

Notwithstanding the designation of the half-acre as a homestead, under the act of 1850, it was still subject to the mortgage to the plaintiff. The act only exempts property thus set apart from judgment and execution for debts contracted subsequently, and does not affect express contracts concerning the land thus set apart, or mortgages, or other conveyances of it by the householder. All that Morse says is, that it is subject to plaintiff's mortgage, and that his own lot is not chargeable until after the plaintiff has exhausted his remedy upon it.

The sale must be set aside, and the parties restored to their rights.